```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

**DAVID B. CRACE,**

        **Plaintiff,**

   vs.                                **Civil Action 2:09-CV-551**
                                          **Magistrate Judge King**

**DEPUTY AMANDA EFAW,** *et al.*,

        **Defendants.**

<u>**OPINION AND ORDER**</u>

This is a civil rights action under 42 U.S.C. §1983 in which plaintiff alleges that defendants, deputies of the Lawrence County Sheriff's Department, subjected plaintiff to excessive force following his 2005 arrest. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Motion for Summary Judgment on Behalf of Defendants, Lawrence County Sheriff's Dept. Deputy Amanda Efaw, Et Al.*, Doc. No. 27 ("*Motion for Summary Judgment*"). For the reasons that follow, the *Motion for Summary Judgment* is **GRANTED in part and DENIED in part**.

**I.     BACKGROUND**

On April 4, 2005, plaintiff, a resident of Chesapeake, Ohio, called police during a domestic dispute with his wife in their home. *Deposition of David B. Crace*, Doc. No. 41-1, pp. 68-70, 82 ("*Plaintiff Depo.*").[1] Patrolman Wallace Workman and Deputy Wes Collins responded to the call. *Id.* at 23, 77-78, 80, 83, 85-86; *Affidavit of David B.*

---

[1] Plaintiff initially filed this action on March 20, 2007, but voluntarily dismissed it on October 2, 2008. *Crace v. Workman*, Case No. 07-cv-232, Doc. Nos. 2 and 19. Plaintiff refiled this action on July 2, 2009. *Complaint*, Doc. No. 2.

*Crace*, Doc. No. 42, ¶ 2 ("*Plaintiff Affidavit*").[2]  Patrolman Workman arrested and handcuffed plaintiff, charged him with domestic violence, and drove him to the Lawrence County Jail ("the jail").  *Id*.; *Affidavit of Deputy Slack*, Doc. No. 38, ¶ 2 ("*Slack Affidavit*"); *Affidavit of Deputy Blake*, Doc. No. 39, ¶ 2 ("*Blake Affidavit*"); *Affidavit of Deputy Efaw*, Doc. No. 40, ¶ 2 ("*Efaw Affidavit*").

Once at the jail, plaintiff was taken to a bench in the booking area.  *Plaintiff Affidavit*, ¶ 4; *Plaintiff Depo.*, pp. 90.  Defendants Deputy Richard Slack, Deputy Boyd Blake and Deputy Amanda Efaw[3] were working at the jail that evening.  *Plaintiff Affidavit*, ¶ 3.  While Deputy Efaw entered the booking information, plaintiff was asked about completing fingerprint paperwork.  *Id*. at ¶ 6; *Plaintiff Depo.*, pp. 35-37, 90-91; *Slack Affidavit*, ¶ 4; *Blake Affidavit*, ¶ 4; *Efaw Affidavit*, ¶ 4.  Shortly thereafter, plaintiff was taken to the ground and a physical altercation between plaintiff and Deputy Slack, Deputy Blake, Patrolman Workman and other officers followed.  *Plaintiff Affidavit*, ¶¶ 6-9; *Plaintiff Depo.*, pp. 35-39, 42-48; *Slack Affidavit*, ¶ 4; *Blake Affidavit*, ¶ 4; *Efaw Affidavit*, ¶ 4.  Deputy Efaw observed, but did not participate in, the physical altercation.  *Plaintiff Affidavit*, ¶ 12; *Plaintiff Depo.*, pp. 29-30; *Efaw Affidavit*, ¶¶ 4-6.

Plaintiff was then lifted to a standing position and placed in a restraint chair.  *Plaintiff Affidavit*, ¶ 10; *Plaintiff Depo.*, pp. 49-52, 96; *Slack Affidavit*, ¶ 5; *Blake Affidavit*, ¶ 5; *Efaw Affidavit*, ¶

---

[2]Patrolman Workman was previously dismissed from this action. *Preliminary Pretrial Order*, Doc. No. 17, p. 2.

[3]It appears that Deputy Efaw has since changed her name, *see Efaw Affidavit* (signed by "Amanda Chaffins"), but for ease of reference the Court will refer to this defendant as "Deputy Efaw."

5. After posting bond and leaving the jail, plaintiff sought immediate medical treatment at St. Mary's Hospital. *Plaintiff Affidavit*, ¶ 13; *Plaintiff Depo.*, pp. 52-53. Plaintiff alleges that he suffered injuries to various parts of his body. *Plaintiff Affidavit*, ¶¶ 14-15; *Plaintiff Depo.*, pp. 53-56.

Thereafter, plaintiff filed this action, suing defendants in their individual capacities. *Complaint*, ¶ 1.

**II.  STANDARD**

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could

reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F.Supp. 2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified

pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*  *See also* Fed. R. Civ. P. 56(c)(3).

**III. DISCUSSION**

Plaintiff asserts claims under 42 U.S.C. § 1983.[4]  To state a colorable claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal constitution or laws by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  To succeed on a claim for a violation of § 1983, a plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him or her of his or her rights secured by the United States Constitution or its laws.  *See Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001).  Because § 1983 is a method for vindicating federal rights, and is not itself a source of substantive rights, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  There is no dispute that defendants in this action acted under the color of state law.

   A.   **Plaintiff's Claims and Applicable Standard**

---

[4]Section 1983 provides in relevant part:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

5

Plaintiff alleges that defendants violated his "right to be free from an unreasonable seizure/excessive force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution[.]" *Complaint*, ¶ 16.  As an initial matter, is not immediately clear whether plaintiff intends to assert separate claims based on separate incidents.  In moving for summary judgment, defendants, noting an ambiguity in the *Complaint*, first presume that plaintiff asserts a separate unreasonable seizure claim based on his arrest.  *Motion for Summary Judgment*, pp. 4-5.  The defendants argue that, because it was Patrolman Workman who arrested plaintiff at his home, there is no viable unreasonable seizure claim against the remaining defendants. *Id*.  Plaintiff does not respond substantively to this argument, but instead appears to characterize the "unreasonable seizure" as defendants' alleged unreasonable uses of force against him. *Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment*, Doc. No. 32, pp. 4-5 ("*Memo. in Opp.*").  Based on the present record, the Court concludes that, to the extent that plaintiff asserts an unreasonable seizure claim based on his arrest by Patrolman Workman, defendants are entitled to summary judgment on that claim. *See*, *e.g.*, *Murphy v. Grenier*, No. 09-2132, 2011 U.S. App. LEXIS 1156, at *3 (6th Cir. Jan. 19, 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)).  However, to the extent that plaintiff intends to assert a Fourth Amendment claim based on the events that occurred during the booking process (acts of alleged excessive force), that claim is addressed *infra*.

In addition, defendants construe plaintiff's allegations to

assert a claim based on a claimed violation of his rights under the Fourteenth Amendment. *Motion for Summary Judgment*, p. 4. Defendants contend that such a claim must fail because plaintiff has not presented facts establishing a violation under the Fourteenth Amendment and because the Fourth Amendment applies to plaintiff's unreasonable seizure / excessive force claim. *Id*. Other than twice asserting that defendants violated his right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments, plaintiff makes no other reference to the Fourteenth Amendment. *Memo. in Opp.*, pp. 1, 4. Instead, plaintiff agrees that the Fourth Amendment applies to his unreasonable seizure / excessive force claim. *Id*. at 4-6.

In order to determine whether there has been a violation of a constitutional right, the Court must first determine the source of the asserted right. *See Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). The parties agree that the Fourth Amendment applies to plaintiff's unreasonable seizure / excessive force claim based on the events that occurred during the booking process. However, defendants apparently believe that plaintiff also intends to assert a separate Fourteenth Amendment (substantive due process) claim based on these same events. To the extent that plaintiff's passing references to the Fourteenth Amendment are intended to assert such a claim, that claim must fail. As the parties acknowledge, the protections of the Fourth Amendment extend through the booking process, which is when the events giving rise to this litigation occurred. *See id*. at 300; *Aldini v. Bodine*, 609 F.3d 858, 865 (6th Cir. 2010) (quoting *Phelps*, 286 F.3d at 300-01). Because the Fourth Amendment governs plaintiff's claim, he

cannot also pursue a claim based on the same facts under the Fourteenth Amendment. *See*, *e.g.*, *Rodriguez v. Passinault*, No. 09-1949, 2011 U.S. App. LEXIS 6206, at *11 n.4 (6th Cir. Mar. 25, 2011) ("Where a plaintiff complains of an unreasonable seizure, the claim is more properly analyzed under the Fourth Amendment than the Fourteenth Amendment's substantive due process provision, since the former is a 'more explicit textual source of constitutional protection.'") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Wilson v. Collins*, 517 F.3d 421, 428 (6th Cir. 2008) ("Given the protection afforded by the Fourth Amendment, the [district] court correctly concluded, per *Graham*, that plaintiff could not also proceed with a claim under the 'more generalized notion of substantive due process.'") (quoting *Graham*, 490 U.S. at 395).

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961), provides, "[t]he right of the people to be secure in their persons, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause. . . ." U.S. Const. amend. IV.  Accordingly, "[t]he Fourth Amendment prohibits the use of excessive force by arresting and investigating officers." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006).  "This prohibition extends to the use of force during booking procedures." *Meirthew v. Amore*, No. 09-1787, 2011 U.S. App. LEXIS 6638, at *7 (6th Cir. Mar. 30, 2011) (citing *Lawler v. City of Taylor*, Nos. 07-1329, 07-1442, 268 F. App'x 384, 386 (6th Cir. 2008); *Phelps*, 286 F.3d at 300-01).

In analyzing excessive force claims under the Fourth Amendment,

8

courts employ an "'objective reasonableness' standard." *Graham*, 490 U.S. at 388. *See also Phelps*, 286 F.3d at 299. "In determining whether an officer's use of force was reasonable, [a court] must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) (citing *Graham*, 490 U.S. at 396) (internal quotation marks omitted). Such a balance requires a court to consider "the facts and circumstances of the particular case, including (1) the severity of the crime, (2) the immediacy of the threat posed by the suspects, and (3) whether the suspects were actively resisting or attempting to evade arrest." *Dorsey v. Barber*, 517 F.3d 389, 401 (6th Cir. 2008) (citing *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007)). "'This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.'" *Id*. (quoting *Smoak*, 460 F.3d at 783) (internal citations omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In addition, a court should consider "the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id*. at 397.

    **B. Application**

        **1. Deputy Efaw**

In this case, there is no dispute that Deputy Efaw, although she observed the physical altercation involving plaintiff, did not use any force against plaintiff. *Plaintiff Affidavit*, ¶ 12; *Plaintiff Depo.*, pp. 29-30; *Efaw Affidavit*, ¶¶ 4-6. Nevertheless, plaintiff contends that Deputy Efaw is liable because she failed to prevent the excessive force used against him. *Memo. in Opp.*, pp. 11-12.

The United States Court of Appeals for the Sixth Circuit has previously held that

> [an] officer who fails to act to prevent the use of excessive force may still be held liable where "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."

*Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Plaintiff, however, has already conceded that he does not believe that Deputy Efaw had the "means" to prevent the other defendants from harming him. Specifically, when asked on deposition if Deputy Efaw did anything to him during the altercation, plaintiff testified, "Nope, she didn't do it, but she didn't stop them. *I don't think she had the power to stop them*." *Plaintiff Depo.*, p. 30 (emphasis added). Accordingly, plaintiff's testimony establishes that he believes that Deputy Efaw did not have the means necessary to stop the alleged harm to him. Based on this record, the Court concludes that plaintiff has failed to set forth specific facts showing that there is a genuine issue as to whether Deputy Efaw violated his constitutional rights.

 2. **Deputies Slack and Blake**

Plaintiff alleges that Deputies Slack and Blake used excessive

10

force against him during the booking process. Deputies Slack and Blake disagree, contending that the force used was minimal and reasonable under the circumstances. According to plaintiff, he was calmly and obediently sitting on the bench while being booked. *Plaintiff Affidavit*, ¶ 5; *Plaintiff Depo.*, pp. 93-94. Someone asked him if his fingerprinting was completed yet and plaintiff responded "I don't know" or "I think you got them last month. Do you need them again?" *Plaintiff Affidavit*, ¶ 6; *Plaintiff Depo.*, pp. 34-37, 90. Although plaintiff avers that he was not sarcastic, yelling, cursing, aggressive or threatening, Deputy Slack and/or Deputy Blake knocked him off the bench so that he hit the ground face first. *Plaintiff Affidavit*, ¶¶ 5, 7-8; *Plaintiff Depo.*, pp. 35-42, 93-94. Plaintiff testified that he did not resist, but that Deputies Slack and Blake grabbed the hair on the back of his head and pounded his face into the floor. *Plaintiff Affidavit*, ¶ 7; *Plaintiff Depo.*, pp. 37-43. He further testified that, while pinned to the ground, Deputies Slack and Blake broke and/or dislocated his right arm. *Plaintiff Affidavit*, ¶ 9; *Plaintiff Depo.*, pp. 37, 44-48. Plaintiff complained of pain, saying that his arm was injured, but Deputies Slack and Blake lifted him to a standing position and strapped him into the restraint chair. *Plaintiff Affidavit*, ¶¶ 10-11; *Plaintiff Depo.*, pp. 49-52.[5]

---

[5]Plaintiff also offers the affidavit of a private investigator, Stan Molnar, hired by plaintiff to review the jail's videotape recording of the events during the booking process, including the physical altercation involving plaintiff. *See Affidavit of Stan Molnar*, Doc. No. 42-1, ¶¶ 1-7 ("*Molnar Affidavit*"). Mr. Molnar was not present during these events and his affidavit simply offers his interpretation of the events captured on videotape, *i.e.*, Mr. Molnar's knowledge is derived exclusively from reviewing the videotape. *Id*. The Federal Rules of Evidence, however, require that "[t]o prove the content" of a recording, the original recording is required unless an exception applies. Fed. R. Evid. 1002. Plaintiff does not submit the videotape referred to in the *Molnar Affidavit*, nor does he explain why he

Conversely, defendants state that plaintiff was uncooperative and cursing while in the booking area. *Slack Affidavit*, ¶ 3; *Blake Affidavit*, ¶ 3; *Efaw Affidavit*, ¶ 3. According to defendants, when Deputy Blake asked plaintiff to accompany him for fingerprinting, plaintiff responded, "Fuck you, you already have my fingerprints and you're not getting them again." *Slack Affidavit*, ¶ 4; *Blake Affidavit*, ¶ 4; *Efaw Affidavit*, ¶ 4. Plaintiff continued to refuse to permit his fingerprints to be taken even after he was advised that every person's prints must be taken each time that person comes to the jail. *Id*. Once Deputy Blake assisted plaintiff to his feet, plaintiff pulled away and raised his fist in an offensive manner. *Id*. It was at that point that Deputy Blake took plaintiff to the floor in order to restrain him. *Id*. Defendants contend that they used the minimal amount of force necessary to restrain plaintiff. *Slack Affidavit*, ¶ 5; *Blake Affidavit*, ¶ 5; *Efaw Affidavit*, ¶ 5. During this time, plaintiff did not complain about any injury. *Slack Affidavit*, ¶ 7; *Blake Affidavit*, ¶ 7. Deputies Slack and Blake believed that, based on plaintiff's offensive gestures and comments, it was necessary to restrain plaintiff in order to protect plaintiff, themselves and other officers. *Slack Affidavit*, ¶¶ 8-9; *Blake Affidavit*, ¶¶ 8-9.

When determining whether the evidence raises a genuine issue of

---

could not do so. None of the exceptions to Fed. R. Evid. 1002 appear to apply in this case. *See* Fed. R. Evid. 1004, 1005, 1006, 1007 (providing exceptions when the originals are lost, destroyed, unobtainable, in the possession of party opponent, relate to collateral matters, of public record, voluminous, or are the admission of a party). Accordingly, the Court will not consider the *Molnar Affidavit* when determining whether there exists a genuine issue of material fact.

material fact as to whether Deputies Slack and Blake used excessive force, this Court must construe the evidence in a manner most favorable to plaintiff. So construing the evidence, the Court is compelled to conclude that there exists a genuine issue of material fact as to whether the Deputies Slack and Blake used excessive force. Because there remain genuine issues of material fact on this issue, the Court concludes that the grant of summary judgment as to the claims against Deputies Slack and Blake is inappropriate.

Finally, Deputies Slack and Blake seek the protections of the doctrine of qualified immunity. "The affirmative defense of qualified or good faith immunity shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The burden of establishing that the constitutional right at issue was clearly established "'rests squarely with the plaintiff.'" *Perez v. Oakland County,* 466 F.3d 416, 427 (6th Cir. 2006) (quoting *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999)). In this regard, the plaintiff must establish that the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Id.* (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

In this case, the facts alleged by plaintiff, if proven, could constitute a violation of a constitutional right that was well established at the time the events at issue in this case are alleged to have taken place. The protections of the Fourth Amendment, which

prohibit the use of excessive force, extend through the booking process.  See *Smoak*, 460 F.3d at 783; *Meirthew*, 2011 U.S. App. LEXIS 6638, at *7.  In determining whether or not the force was excessive, the Court applies an objective reasonableness standard, which considers an officer's on-the-spot judgment about the level of force necessary under the circumstances of that particular case.  See *Graham*, 490 U.S. at 388, 396-97; *Dorsey*, 517 F.3d at 401.  Because there exist genuine issues of material fact as to whether plaintiff was cooperating or angry and aggressive and, therefore, whether the amount of force applied was reasonable, the Court cannot conclude that Deputies Slack and Blake are entitled to summary judgment on the basis of qualified immunity.

Accordingly, *Motion for Summary Judgment on Behalf of Defendants, Lawrence County Sheriff's Dept. Deputy Amanda Efaw, Et Al.*, Doc. No. 27, is **GRANTED in part and DENIED in part**.  Specifically:

1. To the extent that plaintiff asserts a separate claim based on his arrest by Patrolman Workman, the *Motion for Summary Judgment* as to plaintiff's claim of unreasonable seizure is **GRANTED**;

2. To the extent that plaintiff asserts a separate claim based on the Fourteenth Amendment, the *Motion for Summary Judgment* is **GRANTED**;

3. As it relates to plaintiff's unreasonable seizure / excessive force claim against defendant Deputy Amanda Efaw, the *Motion for Summary Judgment* is **GRANTED**;

4. As it relates to plaintiff's excessive force claims against

Defendants Deputy Richard Slack and Deputy Boyd Blake, the *Motion for Summary Judgment* is **DENIED**.

April 15, 2011                             *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge

15